Next case is 19-10644. Mr. Norville? Yes. We're ready for you.  My name is Blake Norville from Abilene, Texas, here on behalf of the appellant, Janette Oldham. Appellant respectfully asks that this court reverse the decision of the district court. Appellant simply wants to go to trial, and the facts of this case merit that. To give the court an overview, here's what happened. The SBA has a rule, and it's codified in the Code of Federal Regulations, I believe it's 14 CFR 120.160, but that rule says that you can't get a spousal guarantee. The rule prohibits the SBA from requiring a spousal guarantee. Well, what happened in this case is the bank, who was processing the loan, told Ms. Oldham, who's the wife of Les Oldham, who was getting an SBA loan. The bank said precisely the opposite. The bank said the SBA requires you to pledge your property. The SBA requires you to sign a spousal guarantee. And see, that's just not right, and that's what brings us here today, because we have a situation where the federal law and the federal regulations specifically said the SBA is prohibited from requiring a spousal guarantee. And this is in writing in an e-mail, and very clear, this is a very clear fact, whereas the bank said no, no, no, the SBA requires you to have a spousal guarantee. So what this case is about is it's a fraud case where a man was tricked and his wife were tricked into pledging the wife's property when that was in violation of federal law. So we believe on those facts we should be allowed to go to trial, and we believe that the district court was in error in dismissing those claims. And the facts are very clear that when at the last minute, you know, Mr. Oldham, who's a small businessman, he's starting a business, he goes into the bank, and at the last minute the banker calls and e-mails and says, you know, bring your wife in because she has to sign because the SBA requires her to pledge her property. And we believe that the bank believed that Ms. Oldham had assets and did this just to get her assets. Now, from the court's perspective, it's important to understand the policy behind that federal regulation. Ultimately, there's some statistics that indicate that 90% of small businesses fail, and when a small business fails, the failure of that small business shouldn't take down the whole family. So 14 Federal Code of Regulation 120.160, it's a regulation that has a sound policy behind it. So when the SBA does the opposite of that and a bank does the opposite of that, they undermine the policy of protecting families. So for those reasons, we urge that the district court's judgment be reversed. And it's also important to understand that a lot of the defenses asserted in this case by the bank and by the SBA are without merit. For example, I guess the SBA's main argument or one of them is simply that Ms. Oldham failed to exhaust administrative remedies, but the problem there is two-fold. One, there's evidence that she did exhaust the administrative remedies by writing a letter and doing everything she could to let the SBA render a decision. That's in the record. But also, this is not a Federal Torts Claims Act case, so there's no indication that failure to exhaust administrative remedies goes to jurisdictional. In other words, we're arguing that it's procedural and not jurisdictional. Even if that's the case, shouldn't we dismiss without prejudice and allow you to exhaust at the SBA? Well, I would argue no because I would argue that the administrative remedies have been exhausted. What's your best case that says administrative remedies is inapplicable? Well, I actually do have a case on point there, and I'm going to get that. I believe it was the Taylor case, but I'll get that for you. But I do have a case that indicates that failure to exhaust administrative remedies in this context does not go to jurisdiction. It's more of a procedural rule. Okay, but do you have a case that says it doesn't apply? And what do you mean by procedural rule? Assuming we agree that it's procedural, what's the remedy when you fail to exhaust? Okay, the remedy should be that the case should be allowed to go forward, and it shouldn't be held against the person. What does procedural mean? Well, I think you have procedural and jurisdictional. I think procedural would mean that it's a procedure that's normally followed through the SBA, but with that procedure's not perfectly followed, it doesn't undercut the court's ability to adjudicate the case. Can the court, within its discretion, dismiss the case until it's exhausted? And not under jurisdiction, say you just procedurally you didn't exhaust, go back and exhaust. If the court has evidence that the administrative remedies have not been fully exhausted, then that would be in the court's discretion. But here I would argue that the administrative remedies were exhausted because an administrative hearing is not required. In other words, Ms. Odom sent the letter, she voiced her complaint, the SBA was given that letter and they responded, so here we would argue. Don't the issues have to match? In other words, you can't say, okay, I shouldn't have to pay because X, and then when you get to district court say, but forget X, how about A, B, C, and D? Shouldn't you have to exhaust A, B, C, and D as well as X? I would argue that the rule should be that you have to give the SBA reasonable notice of the claim and what the claims are, and I would argue that Ms. Odom in her letter did just that. I don't have to pay, but don't you have to raise specific reasons to exhaust? I would argue that you have to give them general notice and general notice is enough. What's your best case that general notice is enough? Well, I don't have a case directly on point, but I think there's an opportunity in this case to go that direction and make that the rule of law, that in a case where you give general notice to an administrative agency that that should be sufficient. In other words, there's always an issue of how specific you have to be, and I think that if you give them general notice of the claim and the nature of it, that should be sufficient. But that's particularly true in a case like this where the SBA in their letter, they never told her about the option to a hearing. I mean, the average person on the street is not an administrative law expert, so the agency shares some burden, and in a case like this, when you look at the correspondence, it's clear that she may have reasonably responded to the agency's request and made a good faith effort to exhaust the administrative remedies. For example, the letter from the SBA doesn't say if you want a hearing, request one. It doesn't say any of that. It basically . . . But she could have raised in a letter what her issues were, correct? That is correct, and I would argue that she voiced her issues in that letter sufficient to give notice so that she should be able to proceed in district court. Counsel, let me make sure I understand the exhaustion argument that's being made. It seems to me in the district court, the SBA was focusing on the failure of your client to request a hearing and was not arguing, and they can tell me if I'm wrong on this, was not arguing what they're arguing here, which is that the individual claims were not sufficiently identified. Here on appeal, the argument is we're not going to worry too much, or at least as a secondary argument, about whether she was required to request a hearing, but she failed to exhaust by not doing what you and the chief judge are talking about, by not fully explaining what her claims were. Was that argument that she did not exhaust by failure to identify all the claims, was that argument made in district court? Your Honor, as far as I know, that argument was not raised in district court, and therefore I would argue that argument is waived on appeal. We'll hear from the SBA about what they raised, but keep going. But I certainly don't recall them raising that. I recall them raising the issue about a hearing was required, and, of course, there's strong arguments that a hearing is not required under the law. Your point about procedural versus jurisdictional seems to me would go to that. If this issue of exhausting in the way that it's being argued now was not raised in district court, the issue may well be waived if it's not a jurisdictional issue, which I don't think it is. You got anything else? Yes. I do, and I think there's a very, again, I would like to emphasize, I think there's a very strong argument that they essentially waived that by not raising it in district court and they shouldn't be able to raise it here for the first time on appeal. All right. Now, another point I would like to point out is on the bank's argument. To get to that quickly, they're going to argue, okay, their main argument is the statute of limitations is run. In other words, we're asserting a fraud claim and other things, and their argument is that the statute is run so you can't assert it. But on the bank's argument, I would point the court to two things. One, under the discovery rule, you can make an argument that she didn't realize this loan, the plaintiff didn't realize, an appellant didn't realize this loan was in violation of the law until a later date, so that's when the wrongdoing was discovered, and therefore under the discovery rule, the statute of limitations is waived. But there's another argument that's even more concrete. What substantive statute of limitations law applies? I would argue it would be the state fraud statute of four years. Which state? Texas. Texas is Texas. Proud to be from Texas. And you know what the discovery rule is in Texas? Yes. Inherently undiscoverable. Yes, and I would argue it would be inherently undiscoverable. Why is the law inherently undiscoverable? It would be inherently undiscoverable for her at the time because the bank sued her on those claims and she had no reason to believe that there was an SBA regulation out there that would prohibit this loan from being made. In other words, the bank's So when did she first find out? When did she first dawn on her that it was illegal? It would be after I started representing her and researched the law. I think around probably March of 2018 or so. Sometime around there. Can I ask you a question about your illegality theory? Sure. I understand your argument about the text on the personal guarantees paragraph in 120.160. But the umbrella that leads into that paragraph says the following requirements are normally required by SBA for all business loans. Normally required. So is there a case anywhere in the country that has said that can make, as a matter of law, the SBA's decision in any particular case unlawful or illegal in your theory? Well, Your Honor, I would argue that I was able to find a case directly on point, but I would argue here if you look at the text of that 121.160 and you combine it with the policy of protecting families, I think it would be clear that it would be unlawful. And the SBA's argument is that I guess an analogy would be this. If, say, a child is taking a cell phone to school and the parent says you can't use your cell phone at all any time during school, and then a teacher says, well, you can use your cell phone during the lunch hour, well, if the child uses the cell phone at lunch, the child's still violating the parent's rule of not listening to the parent, even if the teacher said you can use it at lunch. And I think that's what we have going on here. We do have some other laws, some other regulations that would imply in some cases it's permissive to require a spousal guarantee. But I think when you look at that, I guess, 14 Code of Federal Regulations, 121.160, and you read that text itself, I think it's pretty clear that it's prohibiting a spousal guarantee. And I think the best evidence of that is normally, right? And the thing that we've said in many cases that if the agency promulgates a regulation, we will hold them to it. And we're not going to let them back off on case-by-case basis, because if they want to speak with the force of law and the Code of Federal Regulations, we'll hold them to it. But what they promulgated through presumably noticing comment in this code provision says these are the normal requirements. And so it's not obvious to me how you could then come up with a theory that that would make unlawful or make illegal as a matter of law any particular decision about any particular personal guarantee. Well, I think the best evidence that indicates that it would be unlawful is when the Trump administration wanted to do away with the – wanted to allow spousal guarantees in these loans, they specifically changed that regulation. I think it was – I think it was changed in 13 Code of Federal Regulations, 160.120 or something. So I think that's good evidence that it was a mandatory prohibition, because when the Trump administration wanted to change that, they specifically rewrote that. And I would also argue that from a textualist point of view, just because the word normally is used, it doesn't necessarily suggest that it's discretionary when read in light of the statute as a whole. So in other words, I am aware of that language, but the way I read it is when it comes to that part around the spousal guarantee, I read it to be a mandatory prohibition on it. And I think if you – although the text could arguably be somewhat ambiguous, I think when you read the text in light of the policy of protecting families, I think you can come to the conclusion that it is a strict prohibition, and to allow the SBA to do otherwise in this case would essentially be to allow them to promulgate one set of rules and then not follow their own set of rules. And if we're going to do that, then we essentially have a lawless situation. If they're going to put something in the Code of Federal Regulations, then they need to follow it, not put it in the code and then say, oh, we can make an exception whenever we want. So I would urge – and again, we outlined this in detail in the briefs, but for the reasons stated in the briefs and the points on oral argument, I would argue that under these facts, Ms. Odom deserves a trial. There's enough here that this judgment dismissing the case ought to be reversed and she ought to get a trial on the merit on this case or at least the opportunity to further litigate it. Thank you, counsel. You've saved some time for rebuttal. Yes, five minutes. Thank you. May it please the Court. My name is Katie Boatman and I represent First Bank, Texas. All of plaintiff's claims here arise from the SBA's collection on a guarantee that was signed 14 years ago. As the Court knows, limitations exist for a reason to protect both the Court and the defendant from cases being tried on missing evidence. The fact is that nobody can say what happened 14 years ago when the plaintiff went into the bank to sign that guarantee. That's why the District Court first dismisses claims against the bank based on limitations, holding that the claims accrued in 2006 and that the plaintiff hadn't pleaded any facts justifying accrual. The District Court also dismissed the claims because even if we knew what happened in 2006 and even if it happened exactly as the plaintiff claimed, that wasn't wrongful. The regulations and the SOPs give the SBA and the bank discretion to require guarantees. There's another problem here, which is standing. The plaintiff seems to have abandoned the argument that she is standing to bring the deck actions against the bank. She doesn't argue that in her reply brief. As to the damages claim, her only argument on causation is that the bank's sale of the guarantee to the SBA was wrongful and secret, but she didn't argue that below or in her opening brief to this Court. When the bank sold the guarantee to the SBA, it broke the causal chain. So first, as to limitations, the plaintiff needs her claims not to have accrued until 2014 and 2016 for her 2018 lawsuit to be timely, but to the contrary, all of her claims accrued in 2006. This Court held as much in Caffey v. Heller First Financial, which was also an SBA loan case, where the Court held that as soon as the plaintiffs put a voluntary lien on their property to obtain the SBA loan, limitations accrued. The Court said that the plaintiffs could have at that time brought the claims that they were bringing later. The same is true here. As soon as the guarantee was placed on her property in 2006, or I'm sorry, as soon as she signed the guarantee in 2006, the plaintiff could have brought a claim asserting exactly the same claims she brings here, fraud and deck actions and all the same. So that means that her claims accrued in 2006. When was the first demand made under the guarantee? That was on the – well, so the plaintiff's – or the plaintiff's spouse's company defaulted pretty quickly. They then reworked the loan, and then the bank eventually sued in 2012. She's claimed that that extends the limitations period, but 2012 was after limitations had already expired, so it doesn't revive the claims that were already expired. And then also, you know, back to 2006, the injury was not inherently undiscoverable, as Your Honor pointed out. An injury is not inherently undiscoverable under Texas law when it could have been discovered through the exercise of reasonable diligence. It's not a should-have-discovered. It's a could-have-discovered standard. And, of course, the regulation and the SOPs were available to the plaintiff in 2006 when she signed the guarantee. And there's not a different standard for individuals versus companies and when limitations accrued, but I will note that the plaintiff was integral in getting the loan. She signed a resolution approving the loan, and she signed it in her capacity as a guarantor, so it would have been perfectly reasonable for her to look at the requirements at that time. Fraudulent concealment doesn't apply either. That requires her to prove that the bank actually knew a wrong occurred, had an intent to conceal the wrong, and then actually took action, and she hasn't alleged any facts in 2006 that the bank took to conceal the wrong. So that means that her claims accrued in 2006 and expired long ago. Like I said earlier, in 2009, also, the plaintiff's company defaulted on the loan. She could have looked at that point to see what her obligations were under the guarantee because she knew that it might be exercised on by the bank. So that was another time at which she could have exercised her reasonable diligence. The 2012 lawsuit also cuts against her argument on limitations. In that lawsuit, she responded saying illegality, but, importantly, she didn't counterclaim. She didn't counterclaim for fraud or negligent misrepresentation, all the claims that she's asserting here. And so when the bank dismissed its lawsuit, her defense of illegality went away. If she had counterclaimed, that would have stopped limitations from continuing to run with the caveat that limitation had already expired by that point. So her next argument is that the sale of the guarantee to the SBA was, quote, wrongful and secret. There's a couple problems with that argument. First of all, she didn't argue it below. She didn't argue it in the opening brief to this court. So I believe that it's waived. She never said that she didn't know about the sale of the loan or that it was wrongful. Second, the sale of the loan to the SBA was still nine years after she signed the guarantee. So, again, limitations had long since run by that point. And third, of course, the sale wasn't wrongful because that's the entire idea of an SBA loan. The SBA guarantees the loan and the bank, according to the law and the regulations, can request that the SBA purchase the loan. So the answer is the same with the declaratory judgment actions against the bank. She, in her reply brief, doesn't argue as to the actions and limitations as to the bank, only as to the SBA. So it looks like perhaps she's abandoned those claims as to the bank. The district court also dismissed the claims against the bank because nothing in the regulations prevented the SBA from requiring plaintiff to sign. And, again, this is why limitations periods exist. We don't know what happened at that point. We do know that all parties agree that spouses can volunteer to sign a guarantee. We know that the bank emailed the plaintiff and asked her to come sign a loan application, not a guarantee. And we know that the bank can require officers of a company to guarantee a loan. That's according to 12 CFR 1002.7, which is cited in the bank's brief. Of course the bank has the ability to require an officer of a company to guarantee a loan. The regulation does state that the SBA will, quote, normally not require personal guarantees from those owning less than 5%. And just to be clear, the regulation only has the ownership requirement, not the spouse requirement or the alleged spouse limitation that's in the SOPs. So as Judge Oldham pointed out, the regulation is subject to the normally requirement, and that gives the SBA and the bank discretion. And the SOPs also only illuminate the regulation so they can't be contrary to that and somehow take away the bank's discretion. But, of course, the SOPs don't take away the SBA and the bank's discretion because they specifically say at your discretion you can require other appropriate individuals to guarantee a loan. The SOPs say that the bank and the SBA should work together to determine who should guarantee the loan and gives, as an example, key management persons. And importantly, it says regardless of stock ownership. So that's what happened here. Plaintiff wasn't signing as a spouse. She was signing as a director and officer of the company. Under plaintiff's construction, being a spouse would outweigh any other role that you have in the company, which is just not what the regulations say. In addition, the SOPs also allow, where legal and appropriate, quote, you may require the guarantee of a spouse. So even if she had been required to sign in her capacity as a spouse, that would not be contrary to the SOPs. So we suggest that this court should not hold that the bank and the SBA's hands are tied by the regulations and the SOPs when they expressly say to the contrary. It's worth noting that the company here would not have gotten the loan if the plaintiff hadn't signed the guarantee. The bank gave the plaintiff's spouse's company a lot of money and then had to sell it to the SBA for significantly less. The bank is the one who lost money here, and we suggest that the district court was right to dismiss it. Plaintiff also argued before this court that in 2017 the SBA regulations removed the ownership requirement. Of course, removal of one requirement doesn't change the other language in the regulation in the SOP, and it was 11 years after the guarantee was signed. The regulations in the SOPs gave the bank and the SBA discretion before she signed it, after she signed it, including to this day. And so we believe that that is a red herring. If the court has no other questions, I will forfeit my time. Thank you. May it please the court. Brian Stultz on behalf of the Small Business Administration, the SBA. I'd like to first sort of the overall framework of the status of the claims against the SBA. There were two statutory claims that were brought against the SBA under the Federal Debt Collection Practice Act and the Equal Credit Opportunity Act. Those claims were dismissed by the district court, and on appeal, there's been no argument about the dismissal of those claims. So I think the court can simply find that any challenge based on those claims has been waived on appeal, and so the district court's judgment as to those statutory claims should be affirmed. The remaining claims are a kind of a group of theories that I think can be characterized as attempting to attack or undermine the validity of the guarantee. And Judge Southwick, you asked about the exhaustion issue and how that was raised below. I do think that the SBA appropriately raised the exhaustion issue below. At page 244 to 245 of the record, the SBA explained that the proper method, if the plaintiff wished to challenge the offset of, you know, to collect on this guarantee, the proper method to do so was to go through the process, obtain a final decision from the agency, and then use the Administrative Procedure Act to seek judicial review of that decision. Is there a statute that requires that? Yes. Well, yes, there's a couple different statutes, Your Honor. I think, one, the statute that governs federal offset is at 31 U.S.C. 3716. That statute requires the agency to offer internal review, any agency. In other words, before an agency is trying to offset, they have to give internal review. And, of course, the reason is clear. We don't want people coming to court immediately the day they get a notice that says the government might offset it. It may be a mistake. We need a process for the agency to work through this to figure out if it's done correctly. I can understand why the SBA would want that. My question is a little bit different, which is, is there a statute that requires a plaintiff to exhaust administratively remedies in this context? And I don't think 3716 does it. Do we have another one? I don't think there's a statute. Is there a regulation that requires her to exhaust administratively? So there is a regulation. The regulation is at 13 CFR 140.3. That regulation explains, it's actually written in a question and answer format, and it explains what rights do I have if the SBA is going to offset it. And it says, well, you can do this. If you want to have a hearing, you can do it within 15 days. Now, there's no statute that specifically says to this context that this is the exhaustion process and you have to do it. And that is why we do not argue that this exhaustion requirement is a jurisdictional requirement because it's not something like the Federal Tort Claims Act where the statute expressly establishes the exhaustion. What we have here is a situation where the general federal statute for offsuit requires that there be an internal review process available. There is that process available. So jurisprudentially, the exhaustion requirement that we cited applies. I mean, there are other agencies that have internal dispute procedures that we see all the time. I'm thinking in particular of the Social Security Administration. And when they issue a letter like the SBA did, they will often say, here are the things you must do under Section 405G and 405H before you can go to court, et cetera. And so I understand how those things look. But obviously the statute doesn't say that Ms. Oldham has to do that. 140.3 doesn't say she has to. It says she can, and if you want to, here are the things that are available to you. So it strikes me that the only argument that the SBA would have for requiring administrative exhaustion would be some federal common law thing under Taylor. I think it's a little bit more than that. I will point out that the notice that the SBA sent her, which can be found at page 587 in the record, specifically says if you believe that this debt cannot legally be collected, you must send written documentation to us. So there was language telling her that she must. And you're correct, though, and the Taylor case, I think, is instructive because in Taylor, if you go back and look at what involved a Privacy Act issue, the actual regulations in Taylor basically said it was all written in terms of what the agency needed to do. And so it said upon your receipt of a request under the Privacy Act, the agency does X, Y, Z. There was no language in those regulations saying, you know, a claimant must exhaust. A claimant needs to do this. It was all written in terms of this is the process from the perspective of what the agency should do. Nonetheless, this court in Taylor said that that process was made available, and because that process was available, the plaintiff was obliged to use it before coming into court. And for all the reasons that that court identified, we want the agencies to have the first shot at this to develop the factual record, you know, apply their expertise to correct errors if errors have been made, to conserve the court's resources. And I understand that with respect to federal claims. What would be the best case for the idea that we should jurisprudentially through federal common law impose an administrative exhaustion requirement as to state law claims? I'm not familiar with one. So I think that there is a—I guess I disagree with the notion that it's a state law claim in that sense because what's really going on here is a plaintiff is attempting to challenge a decision of the government to do this offset. And so they have theories of why they're challenging that are sort of rooted in state law, but it's inherently a federal claim. And, for example, at page 244 and 245 of the record in the district court, we cited an APA case called PALA, P-A-L-A, which is an example of how this essentially should be done. You know, if you're disputing this, you work with the agency, you tell them why you think that you shouldn't have your wages garnished or why you shouldn't have an offset. Once the agency has considered that and if they're still adverse to you, then you can take that to court under the APA, and it's an arbitrary and capricious review. Here, the SBA was never presented with any of these claims about why the guarantee was illegal, supposedly, or why the guarantee was not allowed. The SBA never had the opportunity to consider any of that in their decision, and so there is no final decision. How can you say that the agency was arbitrary and capricious by not considering something that was never presented to us? So that's sort of the underlying flaw here. What you just said there was a focus of my question that you started with answering a little while ago, a question to your friend on the other side. If you did not raise—you told me the pages, and I will look at them, and you can tell me if they're there— if you did not raise in district court that she needed to do the things you're talking about right now, haven't you waived that? Since it's not jurisdictional, exhaustion is not jurisdictional. It may not even be required, but that's beside the point of what I'm asking you. If all you raised in district court—and just correct me if that premise is wrong— that she needed to request a hearing, then we're in the issue of she was never told, maybe or maybe not, that that was something she needed to do. So just where are we factually? Did you argue, you, whoever was doing this in district court, that she needed to identify exactly what was wrong and she hadn't done that? So I think the best way to answer that is to—let me explain what happened first— is we filed a motion, we said this wasn't exhausted, you didn't request a hearing, and we said you didn't obtain a final decision on these matters under the APA that would sort of allow for judicial review. APA? Under the Administrative Procedure Act. I didn't quite hear the letters. With the idea being that we've never ruled on these claims. There's no decision to review. Now, at that time, plaintiffs then filed a response that essentially said there's no exhaustion requirement because it's not jurisdictional, it's not a Federal Tort Claims Act claim. And then they said—and we also sent this other letter in that addressed other issues. Under the rules of the district court, Judge Cummings, we didn't have an opportunity. He doesn't allow reply briefs. So essentially that was the end of the matter. What I would say, though, is we didn't waive it because we certainly pointed out to the district court there needs to be a decision from the agency on these issues for you to review it. That's why we cited the APA and explained the way this is supposed to work is the person goes through the process, obtains a decision on these matters, and then the court can review that. So I think we did— Judge Cummings, if I may have bound your hands a little bit, but looking at this sort of procedurally, was there before the district court the argument that this case should be dismissed without prejudice or whatever else because she did not identify the specific problems that you're now raising to us? I do think that was fairly presented to the district court. Not in the same detail here, but through our argument about the fact that you need to obtain a decision, the court would then review that decision. Is it arbitrary or capricious? Obviously, if we haven't made it— No, I would say it hasn't been—it's been elaborated on here, but I think the substance of that argument was presented in the district court. And again, on waiver, again, I don't think we've waived it because this was presented to the district court, but I will also say that counsel did not argue on appeal in any of their briefs that we've somehow waived this issue. And so I know there's actually court cases that say if you think something's waived, you can actually waive your waiver argument. I don't think the court needs to get into that, but I would say here they've never asserted that it was waived. What they've done is they've attacked it on the merits, essentially. They've said it's not jurisdictional, which we are in accord on that issue, and they've also said we sent this other letter in. So that's the waiver. I would also add that on the merits, you know, these arguments fail for all the same reasons the bank said, and that's an alternate ground for dismissals. I thank the court for the consideration. We ask that the judgment be affirmed. Thank you. Any thick briefs? Five minutes. First of all, earlier it was asked what the best cases are for, you know, this administrative validity thing is not jurisdictional, and I would point the court to AIM Controls v. CIR. That's a Fifth Circuit case. That's 672 Federal 3rd, 390. And another case to support the notion that failure to dissolve is procedural, not jurisdictional, that I would point the court to, and it's actually for the Northern District of Texas. It's called Rapid Talk Screen v. Cigna Healthcare of Texas, and that can be looked up. That's 2017 Westlaw 36-58841, but that's on page 42 of our appellate brief. So those are some cases directly on point. And I'd also point out that Judge Cummings doesn't allow oral argument, or at least in our case we were never given a chance to argue to him, so every argument that was made to the district court judge, it's part of the record, and I'm quite certain that the SBA did waive this because the argument they made in their briefs to the district court judge was that essentially Ms. Odom didn't request a hearing, and because she didn't request a hearing, the administrative remedies were not exhausted. And now, of course, they come before this court and they've got a whole list of things she should have done and requested and all this information they should have told them, but I'm quite certain if you review their pleadings, it will indicate that the just of their argument was she didn't exhaust administrative remedies because she didn't request a hearing, and that was the nature of it. So I would argue that they did, in fact, or this court can certainly conclude that the argument they're making now was waived or has been waived. Her benefits have been recouped. It seems to me she has to prevail at the SBA. She has to make arguments. You shouldn't be recouping my payments because. And they can only rule on what she raises. And then I think we have a separate issue of the fact that there's a department that's confiscating the money on behalf of the SBA, so I think it gets even more complicated there. But I would argue that the letter she sent to them and other correspondents from Les Odom was more than sufficient to give them notice of what the Odom's complaints were because you have that letter that was sent, but I also know that Les Odom wrote the SBA on several occasions trying to work this out. So it seems that the SBA certainly had adequate notice of what. Whatever they put in their letters we can look at, and that will tell us what she said. Here are the reasons why you should not be recouping. Yes. Whatever they are, they are. It seems we can agree on that much. We can agree that the record that has the correspondence can tell what the complaints were, yes. And speaking of at the district court level, another issue that I had litigating this case is the fact that the U.S. Attorney's Office sealed the record and for a long time didn't give us access to the record claiming privacy and sensitive information, and of course there was really nothing sensitive in that record now that it's been unsealed, and there were a few, I guess, loan numbers or maybe Social Security numbers that could have been redacted, but I believe that's a further reason to send this case back down to the district court to be further litigated because when we were litigating this at the district court level we were doing it with a sealed record and weren't given access to that record, and again I believe that the government abused its authority to seal a record to gain an unfair advantage in the litigation. But really what this is about is you've got a man who started a small business and a bank that said his wife had to sign off on the note when in fact she did not, when in fact I would argue the rule was exactly the opposite. So this is not a case where someone's trying to get out of a loan or trying to come up with creative arguments to get out of a loan. This is a serious case where a bank officer said in writing, both of you are required to sign the guarantee, and that's not the case. So at the very least this case should be, the judgment should be reversed and it should be sent back to the district court where we can at least do some discovery before more dispositive motions are filed. This case was prematurely dismissed. And finally I would point out that the bank's argument about statute of limitations are without merit because one, the discovery rule, but two, in 2015 they sent bad paper to the SBA and that caused these garnishment actions to happen. So arguably we filed in 2018, and if you set that wrongful act in 2015 on a fraud claim, that's within the four years. So for the reasons stated in our brief and the reasons raised in oral argument, plaintiff would respectfully request that the judgment of the district court be reversed and this case be continued in the district court.